### ABEL v. WARD et al.

(Circuit Court of Appeals, Second Circuit. May 19, 1909.)

#### No. 238.

SALES (§ 173*)—ACTION BY SELLER FOR BREACH OF CONTRACT—DEFENSES.

Under a contract for the sale of a stated number of car loads of potatoes, to be shipped between January 1st and February 28th following, where the sellers had the potatoes ready for shipment, and a few days before the expiration of the time for delivery, having shipped all those ordered, requested the buyer to order or receive the remainder, but at his request, and on his assurance that he would receive the same later, delayed shipment until after the time stipulated in the contract had expired, the buyer cannot urge such delay as a breach of the contract, which justified him in refusing to receive any further shipments.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 173.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

On writ of error to review a judgment entered on the verdict of. a jury in favor of the defendants in error (plaintiffs below) in the Circuit Court for the Southern District of New York for $2,382.28.

Truax & Watson (Isaac H. Levy, of counsel), for plaintiff in error.

Frank H. Reuman (Adolph Kiendl, of counsel), for defendants in error.

Before COXE and WARD, Circuit Judges, and HOLT, District Judge.

COXE, Circuit Judge. This is an action to recover damages for the breach of a written contract entered into between the parties October 22, 1904, whereby the plaintiffs below agreed to sell to the defendant 22 car loads of potatoes to be shipped from Maine to New York between January 1 and February 28, 1904. The contract was in the form of a letter addressed by the plaintiffs to the defendant and accepted by him. It is as follows:

"Dear Sirs: We have sold to Abel & Co. 22 cars of Potatoes to be put up 165 lbs. net, all good stock and free from frost, and to be shipped between January 1st and February 28th.

"5 cars of Rose at $2.10.
"5  "  " Hebrons at $2.10.
"10  "  " Green Mountains at $2.00.
"2  "  " Bliss at $2.40.

"All stock to be shipped in first-class order, delivered New York free from frost.

"Yours very truly,                    W. B. Ward & Co."

Nine car loads were shipped by plaintiffs and were received and accepted by the defendant, but the remaining 13 cars were refused by him, for the reason that they were not shipped before February 28th, pursuant to the terms of the agreement. The plaintiffs contend that, although they were at all times ready and anxious to make the shipment of the remaining cars, they were prevented from doing so by the conduct of the defendant, who adopted a policy of procrastination, obstruction and delay which prevented the shipment before February 28th and was in legal effect a refusal to take the goods. The question submitted to the jury was, in substance, whether or not the defendant had broken the contract by delaying his orders for the 13 cars until it was too late to make the shipments during the life of the contract and then, at the last moment, refusing to receive more cars.

The court charged the jury in the following language:

"If you find that after delaying and delaying, finally towards the end of the contract, but before the time had come when it actually expired, the defendant through the bookkeeper to whom he had entrusted the matter, notified the plaintiffs that he would not take any more, to stop sending the potatoes on, then the plaintiffs would have a cause of action."

The proposition, as thus stated, was pronounced satisfactory by the defendant's counsel and no exception was taken. It seems to be conceded on all hands that it is the custom of the trade for the purchaser in a contract for future delivery like the present to notify the seller when he is ready to receive the goods, in other words to "order

them out." This was the course pursued in the present instance. The plaintiffs had the potatoes on hand and were at all times ready to fill the defendant's orders. Owing to the decline in the market from $2 to $1.30 per bag, orders were slow in arriving and during the last two weeks of February the plaintiffs became apprehensive lest the defendant should delay the delivery until after the time stipulated in the agreement.

William B. Ward, one of the plaintiffs came to New York and saw the defendant on the 17th of February. He says:

"I told him then as our time was getting short I wished to ask him what about the balance of the goods, and I told him I had made up my mind to wire Simonson, my partner, to ship them all at once as our time was getting short; and he told me not to do so, that he would take every one of them and pay for them, but he wanted a little more time."

As the potatoes were ready to ship and as ten days remained in which to comply with the terms of the contract, there can be no doubt that the plaintiffs would have made the delivery but for the request of the defendant for more time. The condition of the market made the request a natural one and one which the plaintiffs would wish to grant, but it probably did not occur to them that the defendant would urge as a breach of the contract the delay which had been granted as a favor to him.

After the 20th of February the defendant's agent, the defendant having left the city of New York, informed the plaintiffs, in reply to a request that he "order out" the balance of the goods, that he would order no more until the arrival of those already ordered. This was tantamount to saying: "I decline to receive the goods pursuant to our agreement." If the jury believed the plaintiffs' testimony they were justified in finding that the defendant by representations and promises which he did not intend to fulfill lulled the plaintiffs into inactivity until it was too late to make deliveries and then repudiated the contract. It is true that the plaintiffs' testimony is disputed but the only question for us to determine is whether there was sufficient evidence to submit to the jury on this issue and we are clearly of the opinion that there was, especially in view of the fact that defendant's counsel pronounced the charge "satisfactory" in this respect.

The rule of damages was correctly stated by the trial judge.

The defendant seems to think that his rights have in some manner been jeoparded by the fact that at a previous trial the plaintiffs were permitted to withdraw a juror and amend their complaint by alleging an extension of the contract beyond the 28th of February. The defendant complains that the plaintiffs have not proved this extension, but have been permitted to recover upon a different theory. If this were true it is difficult to see how the defendant has been injured. A controversy more simple upon the facts can hardly be imagined. A contract to ship 22 cars of potatoes between January 1st and February 28th, the seller at all times ready to deliver and the buyer, because of a falling market, urging delay and inducing the seller to defer delivery until too late to complete it by the stipulated time. It is inconceivable that a party to such a controversy could be misled to his injury because the cause of action or defense was based upon a different

"theory" than the one anticipated. The testimony was the same no matter what inference might be drawn therefrom and there could be no "surprise" in the legal sense, because the plaintiffs argued that the jury might find from the testimony that the defendant had broken his contract. The most that can be said is that the situation is one which frequently arises where the court permits an amendment conforming the pleadings to the proof. In the case at bar, however, the complaint, though not artistically drawn, does allege:

"That on or about the 28th day of February, 1905, * * * the defendant did notify the plaintiff that he could not accept or receive any further deliveries of potatoes under the said contract."

The proof of repudiation was admissible under this allegation. But, as before stated, the defendant having acquiesced in the charge which presents this question, and having pronounced it satisfactory, is not now in a position to insist that the question should not have been submitted to the jury.

We are convinced that a correct result was reached and that no error warranting a reversal is presented by the record.

Judgment affirmed with costs.